**SO ORDERED.**

**SIGNED this 29 day of April, 2008.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: ) | |
| ) | |
| ROBERT ALLEN HAYS and ) | |
| DENISE MARIE HAYS, ) | Case No. 07-41285 |
| ) | |
| Debtors. ) | |
| _____) | |

### MEMORANDUM ORDER AND OPINION

This matter is before the Court on the Trustee's Objection to Confirmation of Debtors' Chapter 13 plan.[1] The Trustee has objected to Debtors' attempt to claim deductions on Line 24 of Form 22C for the living expenses of non-dependent adults living in their home, as well as Debtors' deduction on Line 47 for debt payments secured by a timeshare owned by Debtors. The parties have filed limited stipulations,[2] which this Court adopts. After reviewing the stipulations and the briefs filed by the parties, the Court is now ready to rule. Pursuant to Fed. R. Bankr. P. 3015 and Fed. R.

_____

[1] Doc. 42.

[2] Docs. 54 and 62.

Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law. The Court has jurisdiction to decide this matter,[3] and it is a core proceeding.[4]

## I. FINDINGS OF FACT

Debtors filed for relief under Chapter 13 of the Bankruptcy Code on September 19, 2007. Concurrent with that filing, they filed Form 22C, which claimed a household size of seven people. Those seven people included each Debtor, their 28-year-old daughter, their 22-year-old daughter, their daughter's 28-year-old fiancé, and their six-year-old grandson and four-year-old granddaughter. All of these individuals live in Debtors' home. Debtors do not claim their 28-year-old daughter or the fiancé as dependents on their income tax returns, but did claim their grandchildren as dependents on their 2007 income tax returns because they provided more than 50% of their support during that tax year.

Both daughters are college students, who have at least part-time jobs; neither directly or regularly contribute to Debtors' monthly living expenses.[5] The fiancé living with Debtors has been in military training, and intends to soon attend college. He does not regularly contribute to repayment of Debtors' living expenses. Debtors argue that their 22-year-old daughter qualifies as a dependent for tax purposes, but do not indicate whether they claimed her as a dependent on their most recent tax return. Although not part of the stipulations, Debtors claim in their brief that the 22-

---

[3] 28 U.S.C. § 1334.

[4] 28 U.S.C. § 157(b)(2)(L).

[5] Each daughter earns some income, but the parties have not stipulated whether they purchase part or all of their own food, clothing, etc., for which Debtors are essentially claiming a credit by also including them in their household size. The Trustee calls this a potential "double dip."

2

year-old daughter has a part-time job and earns approximately $7 an hour. Debtors contend that their daughter uses the money on her own "health insurance, education, transportation and other personal expenses."

Debtors purchased a timeshare[6] in May, 2006, which their schedules identify as Solara Surfside Timeshare. The remaining debt on that timeshare is approximately $7,000, and the parties stipulate that the creditor's interest is secured. Debtors' schedules and Chapter 13 plan indicate an intent to retain this timeshare and pay the creditor $50 a month through the plan. Debtors deducted $116 per month on Form 22C, Line 47 on the claim secured by that timeshare, so the Court assumes that the note calls for payments at $116 per month.

Debtors' Form 22C reflects a current monthly income of $9,444.45, which is $113,333.40 when annualized. The applicable median family income for a household of seven in Kansas is $87,726, whereas the applicable median family income for a household of four is $67,026.21. As a result, Debtors are above the median income for Kansas, regardless which household size the Court adopts.

Additional facts will be discussed below, when necessary.

II.  ANALYSIS

    A.  **Debtors cannot include non-qualifying children in household size in determining expenses**

---

[6]Although the parties do not explain the nature of this "timeshare," Debtors have listed it on Schedule A, and the Court assumes it is some form of vacation property ownership whereby Debtors have the option of purchasing an increment of time at a resort, condominium, apartment, or other facility, often with the option to exchange this time for time at a different location. The Court was unable to find a claim by the creditor who purports to have a security interest in some property, but assumes the Trustee has satisfied himself that this creditor does, in fact, have a perfected security interest in some property.

3

The Trustee's first objection is to Debtors' inclusion of their non-dependent, adult children, along with one child's fiancé, in calculating expenses on the means test.[7] The Trustee argues that the Bankruptcy Code[8] does not allow Debtors to claim expenses for non-dependents, with certain exceptions not relevant here. Debtors, on the other hand, argue that the Court should adopt a broad definition of the term "household" that would include anyone residing in the same location as Debtors, regardless of whether the individuals are dependents for tax purposes.

This Court has recently decided the same issue, with slightly different facts, in *In re Law*,[9] the analysis of which the Court adopts by reference. In *Law*, the Court disallowed debtor's inclusion of his adult son in his household size because 11 U.S.C. § 707(b)(2)(A)(ii)(I) limits allowed expenses for the means test calculation, for above median income debtors, to those of the debtor, the debtor's spouse, and the debtor's dependents, unless certain exceptions, such as those found in § 707(b)(2)(A)(ii)(II),[10] apply. After determining that the factual differences in this case are not material, the Court adopts its ruling in *Law*, and sustains the Trustee's objection to confirmation of Debtors' plan on the basis that Debtors' household size is inflated.

---

[7]Debtors have also included two minor grandchildren in the means test calculation, but because they claimed the grandchildren as dependents on their 2007 income tax returns, the Trustee does not object to their inclusion in the means test calculation.

[8]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

[9]No. 07-41285 (Bankr. D. Kan., April 24, 2008).

[10]This subsection allows inclusion of expenses for the continuation of actual expenses paid for the reasonable and necessary care and support of an elderly, chronically ill, or disabled household member, or member of debtor's immediate family if that person is financially unable to pay for his or her own care and support.

4

Debtors claimed expenses on Line 24 of Form 22C (which allows a deduction for food, clothing, household supplies, personal care, and miscellaneous expenses based on National Standards used by the Internal Revenue Service for evaluating offers in compromise of federal tax liability) for a household size of seven individuals. Because the Court has held that Debtors cannot claim expenses for non-dependent adults living in their home, they may not include their 28-year-old daughter or the fiancé of their daughter in calculating household size, and thus expenses on the means test calculations.

Debtors are ordered, if they wish to remain in this Chapter 13 proceeding, to submit within 15 days an amended Form 22C that reflects the appropriate household size—which this Court has held includes only Debtors and their dependents. Although the Court has held that both Debtors and their two grandchildren, who they claimed as dependents on their 2007 income tax return, can be appropriately included, and that the 28-year-old daughter and the fiancé may not be included, the stipulation provided by the parties does not provide sufficient information to allow the Court to determine whether their 22-year-old daughter should be included in their household size.

The Court notes that if the 22-year-old daughter's income is used "on a regular basis for the household expenses of the debtor <u>or the debtor's dependents</u>," then her income must also be included in calculating Debtors' current monthly income pursuant to § 101(10A).[11] If Debtors intend to claim this daughter as a dependent on the expense side of the means test equation, which would be to their benefit, they will also be required to acknowledge that she is a dependent on the

---

[11] 11 U.S.C. § 101(10A)(B) (emphasis added).

income side of the equation, as well.[12] Therefore, if the 22- year-old daughter uses her income on a regular basis for her own household expenses, then that income must be included in Debtors' current monthly income.[13]

### B. Debtors may deduct payments made on debt secured by their timeshare

The second objection raised by the Trustee relates to Debtors' attempt to deduct the monthly payment for the secured debt related to their timeshare property. The Trustee contends that Debtors cannot include the debt secured by the timeshare in their means test calculation because it is not reasonable and necessary.

Confirmation of a Chapter 13 plan is governed by § 1325. Under that provision, the Court cannot confirm a Chapter 13 plan, over an objection by the trustee or the holder of an allowed unsecured claim, unless (1) the plan proposes to pay the unsecured claims in full,[14] or (2) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[15] At issue in this case is whether Debtors

---

[12] *Cf., In re Featherston*, 2007 WL 2898705 at *12 (Bankr. D. Mont. 2007) (holding "Having failed to claim [their son] as a dependent in order to qualify for government benefits, [the] Featherstons shall not be allowed to take the opposite position and now claim that he is a dependent and needs money deducted from their disposable income otherwise payable for the benefit of creditors.").

[13] Based upon the language of § 101(10A)(B), the Court would also note that any amount paid by either the 28- year-old daughter or the 22-year-old daughter's fiancé on a regular basis towards the household expenses of Debtors, **or** Debtors' dependents (whom the Court has held include two grandchildren and potentially the 22-year-old daughter) must be included in the calculation of Debtors' current monthly income, as well.

[14] 11 U.S.C. § 1325(b)(1)(A).

[15] 11 U.S.C. § 1325(b)(1)(B).

6

have complied with the requirements of § 1325(b)(1)(B) by providing all of their projected disposable monthly income during the life of their Chapter 13 plan towards the payment of unsecured creditors.

The term "disposable monthly income" means a debtor's currently monthly income, as defined by § 101(10A), less amounts reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation that first becomes payable after the date the petition is filed," for charitable contributions in an amount not to exceed 15 percent of the gross income of the debtor, and, if the debtor is engaged in business, for the payment of costs necessary for the continuation, preservation, and operation of the business.[16] If a debtor's currently monthly income, when multiplied by 12, is greater than the median family income for a household of the same size, and in the same state, as the debtor, then the "[a]mounts reasonably necessary to be expended under [§ 1325(b)(2)], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[17]

In this case, it is undisputed that Debtors' current monthly income is greater than the median income for even a seven-person family in Kansas. Therefore, pursuant to § 1325(b)(3), the amounts reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor" must be determined by examining § 707(b)(2)(A) and (B).

As noted by the court in *In re Austin*,[18] under pre-BAPCPA practice, the courts had discretion to determine whether an expense listed on Schedule J was "reasonably necessary," and thus, whether

---

[16]11 U.S.C. § 1325(b)(2).

[17]*Id*. (emphasis added).

[18]372 B.R. 668, 680-81 (Bankr. D. Vt. 2007).

7

the expense would be allowed in determining how much a debtor would be required to pay unsecured creditors. The clear language of post-BAPCPA § 1325(b)(3), however, strips the Court of that discretion by stating that "[a]mounts reasonably necessary to be expended . . . <u>shall</u> be determined in accordance with subparagraphs (A) and (B) of 707(b)(2)" for above median income debtors.[19] The Court finds the congressional mandate in this section is clear—courts "shall" utilize the provisions of § 707(b)(2)(A) and (B) to determine what amounts are "reasonably necessary" to be expended for means test purposes.[20]

Section 707(b)(2)(A)(iii) provides the required treatment on the means test for a debtor's secured debts. It states:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

In adopting § 707(b)(2)(A)(iii), Congress clearly chose to differentiate between normal, ongoing contractual payments due on a secured debt, contained in subsection (I), and those

---

[19]*Id.* (emphasis added).

[20]The Court does still have overall discretion to determine under § 1325(a)(3) whether the plan has been proposed in good faith and not by any means forbidden by law. The Trustee expressly did not object to confirmation on the basis the overall plan was not filed in good faith, or by any means forbidden by law, so the Court does not decide that issue here.

payments that are required to cure a default on contractual payments due on a debtor's "primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents," set out in subsection (II). Section 707(b)(2)(A)(iii)(I) allows a debtor to divide "all amounts scheduled as contractually due to secured creditors" by 60 to arrive at a deduction for ongoing secured debt payments. Conversely, § 707(b)(2)(A)(iii)(II) only allows a debtor to deduct the additional payments necessary to cure a default on the debtor's home, car or other property "necessary for the support of the debtor and the debtor's dependents."

Although the plain language clearly does not fit with the stated goal of Congress in passing BAPCPA—that of maximizing the amount a debtor must pay to his unsecured creditors, the language in § 707(b)(2)(A)(iii) is dispositive. Debtors are not trying to cure an arrearage on the timeshare, which sums would not be deductible from income because even Debtors do not argue that the timeshare is reasonable and necessary for their support. Instead, Debtors have only included the secured debt owed to the timeshare creditor, divided by 60, as allowed by subsection (I).

The restriction Congress placed in § 707(b)(2)(A)(iii)(II) for delinquencies on secured debt where the property involved is necessary for the support of the debtor and the debtor's dependents is clearly absent from § 707(b)(2)(A)(iii)(I) dealing with the monthly contractual payment due on the secured debt. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[21]

Were the Court to read a general requirement that all expenses deducted on the means test be reasonable and necessary, it would render a portion of § 707(b)(2)(A)(iii)(II) inoperative. In

---

[21]*Russello v. United States*, 464 U.S. 16, 23 (1983).

other words, if § 1325 required the Court to make a "reasonable and necessary" determination in above median income cases beyond simply determining whether an expense is allowed under § 707(b)(2)(A) and (B), then there would be no reason for the Code to limit the expenses allowed under § 707(b)(2)(A)(iii)(II) to those that are "necessary for the support of the debtor and the debtor's dependents."[22] It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."[23]

The court in *In re Carlton*[24] agreed with this statutory interpretation when it held that after adoption of the BAPCPA provisions, "the Court does not use its own judgment on reasonableness or necessity but, rather, must determine whether a particular expense is allowed by § 707(b)(2). If an expense is allowed under § 707(b)(2), it meets the new definition of 'reasonable and necessary' and no subjective review of the expense by the court is permitted."[25]

Admittedly, at least one court interpreting this same statute has come to the opposite conclusion, finding that the "necessary" requirement found in § 707(b)(2)(A)(iii)(II) can also be

---

[22]The requirement that expenses be reasonably necessary is found in other parts of § 707(b)(2)(A) and (B), as well, and that language would also be made redundant if there is an overriding reasonable and necessary requirement. *See, e.g.*, § 707(b)(2)(A)(ii)(I) (requiring that expenses for health insurance be "reasonably necessary," and indicating that an additional 5 percent of the food and clothing categories under the national standards must be "reasonable and necessary") and § 707(b)(2)(A)(ii)(IV) (requiring that the additional allowance for monthly housing and utilities must be based on the debtor's actual expenses, and that such actual expenses are "reasonable and necessary.")

[23]*See Colautti v. Franklin*, 439 U.S. 379, 392 (1979); *Stinson v. BB & T Investment Serv. Inc. (In re Stinson)*, 285 B.R. 239, 248 (Bankr. W.D. Va. 2002) (noting that if § 525(b) included hiring based on the "discrimination with respect to employment against" language, then it would cause the anti-termination provision to be redundant).

[24]362 B.R. 402 (Bankr. C.D. Ill. 2007).

[25]*Id.* at 411.

10

applied to the expenses for secured debt set out in § 707(b)(2)(A)(iii)(I). In *In re Owsley*,[26] the above median income debtors included a debt secured by a recreational vehicle in their means test calculation. The court rejected the objecting creditor's argument that § 1325(b)(3) required the court to conduct an evaluation of whether all expenses allowed under § 707(b)(2)(A) and (B) are reasonable and necessary. Instead, the court found, as this Court does, that if an expense is allowable under § 707(b)(2)(A) and (B), then it is statutorily deemed reasonable and necessary for purposes of § 1325.

However, the *Owsley* court went on to hold that the clause limiting allowed expenses to those that are tied to "property necessary for the support of the debtor and the debtor's dependents" should be read to apply to both § 707(b)(2)(A)(iii)(II) and § 707(b)(2)(A)(iii)(I).[27] The court reasoned that although rules of statutory construction indicate that the language from § 707(b)(2)(A)(iii)(II) should not be read into § 707(b)(2)(A)(iii)(I), failure to do so would "produce an absurd result that is antithetical to congressional intent."[28] The court held that it could "find no compelling ground on which to exempt secured obligations from the limiting language of subclause (II) simply because they are current as of the date of filing."[29]

Although the Court certainly shares the concerns raised by the court in *Owsley*, it does not find that applying § 707(b)(2)(A)(iii) according to its clear language is patently absurd or necessarily

---

[26] ___ B.R. ___, 2008 WL 868044 (Bankr. N.D. Tex. 2008).

[27] *Id.* at *7-8.

[28] *Id.* at *7 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) (holding that the plain meaning of a statute should be conclusive except when "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.")).

[29] *Id.*

11

contrary to congressional intent. The structure and language of § 707(b)(2)(A)(iii) is written in a form that it is clear that Congress, for some reason, chose to differentiate between secured debts upon which debtors were current as of the date the petition was filed, and those secured debts where the debtor would be required not only to pay the secured debt, but also a pre-petition arrearage on that secured debt. This does not appear, at least to this Court, to be a situation where the statute was awkwardly drafted in a manner where the text of the statute provides a different result than Congress intended. Rather, the placement of the limiting language in § 707(b)(2)(A)(iii)(II) suggests that Congress purposely elected to include it only in subsection (II). Although this Court does not fully understand why Congress deemed it appropriate to allow debtors to claim expenses for all of their secured debt that was current as of the date of filing—even for luxury items, but to limit the expenses necessary to cure pre-petition defaults on secured debt to only that property deemed necessary for the support of the debtor and the debtor's dependents, it is clear that Congress did make that policy decision. It is not this Court's role to rewrite statutes to conform with its own sense of fairness or good policy. Instead, it is the Court's duty to interpret the will of Congress, and once Congress makes its will known by the terms of a statute, to enforce the statute as written.[30]

Based upon the clear wording of § 707(b)(2)(A)(iii), the Court agrees with the majority of courts that have decided this issue, that an above median income debtor does not have to show that an expense on Line 47 for a secured debt is reasonable or necessary for the support of the debtor or

---

[30]*See Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 13-14 (2000) ("Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts") and *United States v. McIntosh,* 236 F.3d 968, 972 (8th Cir. 2001) (holding that irrespective of how much we dislike a particular outcome, or how we see the equities of the case, we are not at liberty to rewrite the statute).

the debtor's dependents for the expense to be included in the debtor's means test calculation.[31]

Therefore, the Trustee's objection to Debtors' inclusion of the debt relating to their timeshare is overruled.

### III. CONCLUSION

The Trustee's objection is sustained in part, and denied in part. The Court sustains the Trustee's objection as it relates to Debtors' attempt to claim expenses for non-dependent individuals in their means test calculations on Form 22C. At least two, and possibly three, of the individuals Debtors attempted to claim in their means test calculations cannot be included in their household size, as above explained.

The Court overrules the Trustee's objection as it relates to Debtors' inclusion of the regular payment on the debt secured by their timeshare in the means test calculation. Whether a debt is reasonably necessary for above median income debtors pursuant to § 1325(b)(3) is governed exclusively by § 707(b)(2)(A) and (B). Section 707(b)(2)(A)(iii)(I) clearly allows the deduction of the amount owed on the secured claim on the timeshare, and it was thus properly included by Debtors.

---

[31]*See, e.g.*, *In re Austin*, 372 B.R. 668, 680-82 (Bankr. D. Vt. 2007) (finding it did not have discretion to determine the reasonableness of payments that above-median debtors propose to make on the backhoe, since that debt was current on the bankruptcy filing date), *In re Edmondson*, 371 B.R. 482, 484-85 (Bankr. D.N.M. 2007), and *In re Carlton*, 362 B.R. 402 (Bankr. C.D. Ill. 2007). *See also* Eugene Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 274 (Spring 2005) (noting that "subclause (I) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, without regard to whether the property securing the debt is necessary. Thus, for purposes of the means test, debt secured by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible."). It is highly unlikely that this Court would allow a debtor to deduct any amount needed to cure a delinquency on a timeshare (on Line 48), however, because the Court cannot presently fathom a fact pattern where such vacation property would be reasonably necessary for the support of any debtor.

13

Based upon these rulings, Debtors' Chapter 13 plan cannot be confirmed. If Debtors wish to continue in this Chapter 13 proceeding, they must file an amended Form 22C, which incorporates the Court's rulings, within 15 days. They must also amend their plan within 15 days to reflect the required payment to unsecured creditors. If Debtors do not amend Form 22C and file an amended plan in conformity with this opinion within 15 days, this Court will dismiss this case for cause under § 1307(c)(1) and (3) for unreasonable delay by Debtors that is prejudicial to creditors, and failure to timely file a new plan after denial of confirmation of the plan then on file.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Objection to Confirmation of Debtors' Chapter 13 plan is sustained in part and overruled in part. The objection is sustained as it relates to the expenses claimed on Line 24 of Form 22C for non-dependent individuals living in their home. The objection is overruled as it relates to the deduction of the payment on the secured claim for Debtors' timeshare claimed on Line 47(b) of Form 22C.

###